FILED
SUPERIOR COURT
OF GUAM

2022 OCT 11 PM 4: 39

CLERK OF COURT

BY:_____

# IN THE SUPERIOR COURT OF GUAM

| | |
|---|---|
| PACIFIC DATA SYSTEMS, INC., | CIVIL CASE NO. CV0760-21 |
| Plaintiff, | |
| vs. | **DECISION AND ORDER** *Re: Plaintiff's Motion for Preliminary Injunction* |
| GUAM DEPARTMENT OF EDUCATION, | |
| Defendant. | |

## <u>INTRODUCTION</u>

This matter came before the Honorable Arthur R. Barcinas on August 2, 2022, for a hearing on Plaintiff Pacific Data System's Inc.'s ("PDS") Motion for Preliminary Injunction. Present at the hearing were: Attorney Joshua Walsh for PDS; Attorneys Christine S. Tenorio and James Stake for Defendant Guam Department of Education ("GDOE"); and Attorney William Brennan for Intervenor Teleguam Holdings, LLC dba GTA ("GTA"), with GTA representative Ms. Rosario. Having considered the arguments, briefs, and applicable law, the Court hereby **GRANTS** PDS's Motion for Preliminary Injunction.

## BACKGROUND

This case arises from PDS's Verified Complaint praying for the following relief:

(1) to enjoin GDOE from taking further action regarding performance under the Invitations for Bid ("IFB");

(2) to declare that the automatic stay under 5 GCA § 5425(g) was triggered upon the filing of the protest by PDS and that GDOE's efforts to finalize the contract were in violation of law;

(3) to determine that the contracts entered by GDOE for the IFBs are void ab initio; and

(4) to award PDS's attorney's fees and costs to the extent allowed by law.

*See* V. Compl. p. 9 (Oct. 28, 2021). The events that allegedly prompted PDS to bring the instant action are as follows.

On April 28, 2021, GDOE issued two IBFs for the procurement of Plain Old Telephone Services ("POTS") and Data Transmission Services ("DTS"). Both PDS and GTA submitted bids for both IBFs on May 27, 2021. Then on or about June 4, 2021, GDOE issued notices of award for both IFBs to GTA.

Less than a week later, on June 9 and 10, 2021, PDS protested the selection of GTA as the lowest bidder and asserted that (1) the selection of GTA violated procurement law because the pricing proposed by GTA did not conform to the Guam Telecommunications Act tariff filed and approved by the Guam Public Utilities Commission ("GPUC"), and (2) that GTA's bid could not meet the start date specified in the IFBs. GDOE denied PDS's protest on June 29, 2021.

Less than one month later, on July 14, 2021, PDS initiated appeals to the OPA. Then on August 31, 2021, PDS filed a motion seeking to have the OPA issue an order determining that the stay mandated by 5 GCA § 5425(g) has remained in place since the initiation of PDS's protest. That same day, GDOE filed a motion to dismiss the appeal claiming that (1) the OPA lacks subject matter jurisdiction to review the denial of PDS's agency-level protest; and (2) since

the tariff is set by the Guam Telecommunications Act, any review of the tariff can only be done before the GPUC.

Before the OPA issued its decision on the motions described above, GDOE transmitted fully executed contracts for both the POTS and DTS to GTA, on September 7, 2021, and a congratulatory letter stating that services shall commence no earlier than October 1, 2021. GTA engineers and technicians began working on the facilities necessary to perform under the contracts on September 11, 2021. Then on September 20, 2021, GTA submitted a Local Service Request ("LSR") to PDS to begin the porting process and transition services, which are necessary for the customer to continue to use the same phone numbers despite the change in provider. On September 21 and 24, 2021, GTA sent additional LSRs for porting and transition of services in anticipation of performance by October 1, 2021. PDS responded on September 24, 2021, confirming receipt of the LSRs and stating that PDS has placed a hold on further processing of the orders pending review by Counsel.

On October 5, 2021, the OPA issued a decision, which agreed with GDOE's position as it relates to the issue of tariffs and directed PDS to go before the GPUC.[1] However, the OPA issued no decision or statement regarding the existence of the stay under Title 5 GCA section 5425(g).

Then on October 28, 2021, PDS filed the instant suit against GDOE without including GTA. The next day, PDS filed the instant Motion for Preliminary Injunction. On December 15, 2021, GDOE filed its Opposition.

---

[1] During the formal hearing, the Public Auditor granted GDOE's Motion to Dismiss for Lack of Subject Matter Jurisdiction filed on August 31, 2021. However, *PDS was instructed to file a petition or complaint regarding the issue of Teleguam Holdings LLC's (GTA) bid prices violating the Telecommunication Act with the Guam Public Utilities Committee to decide on that issue first*, as they are the proper forum, and *they may refile an appeal with the Office of Public Accountability* as these consolidated appeals will be *Dismissed Without Prejudice*. V. Compl. Attachment B (Oct. 28, 2021) (emphasis added).

On December 3, 2021, GTA filed a Motion to Intervene. Finding it necessary to first address GTA's Motion to Intervene, the Court held the Motion for Preliminary Injunction in abeyance. As such, the Court later issued its Decision and Order granting GTA's motion to intervene on April 15, 2022. Then, on April 27, 2022, GTA filed its Opposition to PDS's Motion for Preliminary Injunction. A hearing on the Motion for Preliminary Injunction was held on August 2, 2022, wherein all three parties made their arguments, and the Court took the matter under advisement.

## DISCUSSION

### I. SUPERIOR COURT JURISDICTION

Given the unique posture of the instant matter, the Court finds it necessary to first address the issue of its subject matter jurisdiction. The Court's jurisdiction is generally set forth in Title 7 GCA section 3105:

> The Superior Court shall have original jurisdiction over *all causes of action*, and, except for those causes exclusively vested in the Supreme Court, may have appellate jurisdiction as may be provided by the Legislature.

7 GCA § 3105 (emphasis added). The Court's jurisdiction as it relates to Guam's procurement law is set forth in Title 5 GCA section 5480(a):

> (a) Solicitation and Award of Contracts: The Superior Court of Guam shall have jurisdiction over an action between the Territory and a bidder, offeror, or contractor, either actual or prospective, to determine whether a solicitation award of a contract is in accordance with the statutes, regulations, and the terms and conditions of the solicitation. *The Superior Court shall have such jurisdiction in actions at law in equity, and whether the actions are for monetary damages or for declaratory, or other equitable relief.*

5 GCA § 5480(a) (emphasis added).

GDOE argues that "PDS failed to timely raise its stay issue as 'grounds for appeal' in its July 15, 2021[,] appeal to the OPA and instead untimely raised its stay issue in [its] August 21, 2021[,] motion to the OPA." Def's Opp'n p. 8 (Dec. 15, 2021). As such, GDOE argues that "this

Court does not have jurisdiction over PDS's stay claim because such stay claim was not protested within the statutory window." Def's Opp'n p. 8 (Dec. 15, 2021). This argument seems to suggest that because the stay issue was not within the purview of the OPA, at the appeal to the OPA stage, it is not and cannot be within the purview of this Court thereby stripping this Court of its jurisdiction. This argument fails for several reasons. First, the application of the stay under Title 5 GCA section 5425(g) is intended to be automatic. *See Guam Imagining consultants, Inc. v. Guam Memorial Hospital Auth.*, 2004 Guam 15 ¶ 35. Therefore, even if PDS did not assert that the stay was triggered in its appeal to the OPA, such failure to do so does not work to strip this Court of its jurisdiction.

Second, even if the instant matter were brought before the Court in the typical sense— that is for judicial review initiated in the form of a civil action—the Court is not limited to the administrative record. *See DFS Guam L.P. v. A.B. Won Pat International Airport Authority, Guam*, 2020 Guam 20 ¶ 48.

Finally, the matter before the Court is not one seeking judicial review, but instead, one seeking a preliminary injunction. As such, the Court does not get to the point of discussing the merits of the record made, or not made, at the appeal to the OPA level. Therefore, the Court's jurisdiction over the instant matter is rooted in both Title 7 GCA section 3105—the Superior Court shall have original jurisdiction over *all causes of action*—and Title 5 GCA section 5480(a)—*the Superior Court shall have such jurisdiction in action at law in equity, and whether the actions are for monetary damages or for declaratory, or other equitable relief. See* 7 GCA § 3105; 5 GCA § 5480(a). Having established the Court's jurisdiction, it now turns to consider whether a preliminary injunction is appropriate.

## II. PRELIMINARY INJUNCTION

A preliminary injunction is "interlocutory, tentative, provisional, ad interim, impermanent, mutable, not fixed or final or conclusive, characterized by its for-the-time-beingness." *Tumon Partners, LLC v. Shin*, 2008 Guam 15 ¶ 22; citing *Hamilton Watch Co. v. Benrus Watch Co.*, 206 F.2d 738, 742 (2nd Cir. 1953). "It serves as an equitable policing measure to prevent the parties from harming one another during the litigation; to keep the parties, while the suit goes on, as far as possible in the respective positions they occupied when the suit began." *Id.* The test for obtaining a preliminary injunction requires a movant to show: (1) irreparable injury, and (2) the likelihood of succeeding on the merits. *See Government of Guam v. Gutierrez*, 2015 Guam 8 ¶ 35; quoting *Sananap v. Cyfred*, 2009 Guam 13 ¶ 14. The Court addresses each in turn.

### a. Irreparable Injury

The first requirement for a preliminary injunction is an irreparable injury. Courts have expressed that "[t]he purpose of a preliminary injunction is always to prevent irreparable injury so as to preserve the court's ability to render a meaningful decision on the merits." *Tumon Partners*, 2008 Guam 15 ¶ 22; citing *Canal Auth. of Fla. v. Callaway*, 489 F.2d 567, 576 (5th Cir. 1974). "A determination of irreparable harm typically focuses on categories of harm that do not easily lend themselves to monetary compensation." *Gutierrez*, 2015 Guam 8 ¶ 37; citing *Sule v. Guam Bd. Of Exam'rs for Dentistry*, 2011 Guam 5 ¶ 12. Further, irreparable harm exists where "pecuniary compensation would not afford adequate relief or [where] it would be extremely difficult to ascertain the amount that would afford adequate relief." *Id.*; quoting *DVD Copy Control Ass'n v. Kaleidescape, Inc.*, 97 Cal. Rptr. 3d 856, 876 (Ct. App. 2009).

However, "if the currently existing status quo itself is causing one of the parties irreparable injury, *it is necessary to alter the situation so as to prevent injury ... by allowing the parties to*

*take proposed action that the court finds will minimize the irreparable injury." Tumon Partners,* 2008 Guam 15 ¶ 22 (emphasis added); citing *Canal Auth. of Fla. v. Callaway*, 489 F.2d at 576 ("If the currently existing status quo itself is causing one of the parties irreparable injury, it is necessary to alter the situation so as to either prevent the injury, either by returning to the last uncontested status quo between the parties [citation omitted], by the issuance of a mandatory injunction [citation omitted], or by allowing the parties to take proposed action that the court finds will minimize the irreparable injury. The focus always must be on prevention of injury by a proper order, not merely on preservation of the status quo.") Therefore, the first question before the Court, as it relates to a preliminary injunction, is whether PDS has suffered an irreparable injury that is either (1) beyond monetary relief, or (2) such that the current status quo itself is causing irreparable injury and an appropriate order is necessary to minimize such injury.

PDS argues that GDOE's continued effort to obtain contract performance from GTA poses an irreparable injury, as its available remedies significantly change depending on whether GDOE is enjoined from moving forward with contract execution and performance. *See* Pl's Mot. for Prelim. Inj. p. 5 (Oct. 29, 2021). In contrast, GDOE argues that PDS has not suffered irreparable injury, because pecuniary compensation would afford PDS adequate relief. *See* Def's Opp'n p. 9 (Dec. 15, 2021).

Here, the Court finds that the appliable standard for irreparable injury is whether the current status quo itself is causing irreparable injury. Further, the Court puts its focus on preventing injury by a proper order. *See Canal Auth. of Fla. v. Callaway*, 489 F.2d at 576. As such, the Court finds that should an injunction preventing GDOE from moving forward with their contract with GTA not be granted, PDS would suffer harm in the form of losing their bid protest without the OPA ever reaching the merits of PDS's appeal. In other words, if this Court does not err on the side of preventing injury by way of an injunction, GDOE and GTA would be operating

on the following *presumptions*: (1) that GTA would resume performance as if it had been deemed the winning bidder despite PDS's protest, and (2) the contracts for the POTS and DTS were valid. Further, these presumptions would be enforced and performed without PDS ever having been heard on the merits of its protest appeal. Therefore, with consideration of the current status quo, focus on preventing irreparable harm, and equity, the Court finds that PDS suffers irreparable harm in the currently existing status quo. The Court now turns to the likelihood of success on the merits.

### b. Likelihood of success on the merits.

The second requirement for a preliminary injunction is the likelihood of success on the merits. Where a court does not make a finding of the likelihood of success on the merits, it should not grant an injunction. *Gutierrez*, 2015 Guam 8 ¶ 42; *see* also *Small v. Kiley*, 567 F.2d 163, 164 (2nd Cir. 1977). PDS's likelihood of success on the merits turns on several considerations: (1) whether PDS's protest was timely; (2) whether PDS's protest was pre- or post-ward; and (3) whether PDS exhausted administrative remedies. The Court addresses each in turn.

### i. Timeliness: PDS's Protest against GDOE

The first statutory step to challenge a bid award is set forth in Title 5 GCA § 5425(a):

(a) Right to Protest. Any actual or prospective bidder, offeror, or contractor who may be aggrieved in connection with the method of source selection, solicitation, or award of a contract, may protest to the Chief Procurement Officer, the Director of Public Works[,] or the head of a purchasing agency. *The protest shall be submitted in writing within fourteen (14) days after such aggrieved person knows or should know of the facts giving rise thereto.*

5 GCA § 5425(a); *see* also *Teleguam Holdings, LLC v. Territory of Guam*, 2015 Guam 13 ¶ 22. "A party becomes 'aggrieved' when they become aware of a violation of one of the procurement law's substantive provisions or the terms of the RFP." *DFS*, 2020 Guam 20 ¶ 84.

The Court notes that the Supreme Court has expressly rejected the argument that timeliness is evaluated based on the notice of the proposed award, not notice of the underlying facts that gave rise to the protest. *Id.* at ¶ 85. Further, the Supreme Court noted that "how the protest is framed by the aggrieved bidder—including whether they frame the protest as a challenge to the solicitation, the evaluation, or the award—does not dictate when the time period to file a protest begins to run." *Id.* at ¶ 86.

Therefore, to determine the date on which the 14-day window of section 5425(a) begins to run the court must conduct an analysis examining *what facts are necessary to establish a protest claim and when the protester knew or should have known facts establishing the essential elements of that protest claim. Id.* at ¶ 88 (emphasis added). This determination "depends on the cumulation of facts available to the protestor." *Id.*; citing *City & Cty. of San Francisco v. United States,* 130 F.3d 873, 877-78 (9th Cir. 1997).

As such, the first step to determine whether PDS's protest against GDOE was timely, is to identify when PDS became aware of a violation of a substantive provision of procurement law or a term of the IFB.

GDOE argues that PDS's protest was untimely because PDS knew the facts giving rise to the issue thereto on May 17, 2021, and directs the Court's attention to GDOE's Attachment 1. *See* Def's Opp'n p. 3 (Dec. 15, 2021). The attachment GDOE is referring to reflects an "Amendment Acknowledgement Form" signed by one, Frank Artero, an authorized representative of PDS. *See* Def's Opp'n Attachment 1 (Dec. 15, 2021). The following events occurred thereafter. On May 27, 2021, GDOE received bids for the IBFs from PDS and GTA. On June 4, 2021, GDOE issued its notice of awards to GTA for both IFBs, as the lowest, most responsible, and responsive bids. On June 9 and 10, 2021, PDS protested the selection of GTA as the lowest priced responsive offeror under the IBFs asserting that (1) the selection of GTA

violated procurement law as the proposed price did not conform to the tariff under the Guam Telecommunications Act; and (2) GTA's bid could not meet the start date specified by the IFBs.

The Court is not persuaded by GDOE's argument that PDS knew of facts giving rise to its protest on May 17, 2021. The determination of when the 14-day window begins depends on the cumulation of facts available to the protestor at that time. At the time of May 17, 2021, the facts available to PDS were the information of the IFBs issued on April 28, 2021, and the amendments made thereto. The bids from both PDS and GTA were not submitted until May 27, 2021. Then on or about June 4, 2021, GDOE issued notices of award for both IFBs to GTA. It was only at that moment, on June 4, 2021, when PDS could have known of the alleged facts giving rise to its protest including (1) the selection of GTA violated procurement law because the pricing proposed by GTA does not conform to the Guam Telecommunications Act tariff filed and approved by the GPUC, and (2) that GTA's bid could not meet the start date specified in the IFBs.

Further, the Court acknowledges that June 4, 2021, was the day GDOE issued its notice of award, which the Supreme Court expressly denied recognizing as a basis in which the 14-day window begins. However, the Court also emphasizes that June 4, 2021, just so happens to be the day PDS could have come to know of the alleged facts giving rise to its protest. Therefore, the Court finds that the 14-day window for PDS to file its protest against GDOE began on June 4, 2021. PDS initiated its protest about five to six days later, on June 9 and 10, 2021. These five to six days are well within the 14-day window allowed under the statute. *See* 5 GCA § 5425(a).

Further, GDOE argues that PDS presumably knew about the acts giving rise to the issue of the GTA allegations more than 14 days before PDS filed its protest on June 10, 2021, because PDS knew about a GTA lawsuit filed on February 26, 2021. *See* Def's Opp'n p. 3 (Dec. 15, 2021). Again, the Court is not persuaded by this far speculative argument. The GTA lawsuit,

referenced by GDOE, was initiated about two months before GDOE even issued the IFBs in April, and at least three months before PDS submitted its bids in May. While GDOE postures its argument in a way that makes it seem that PDS is far outside the 14-day window to protest, GDOE's argument only serves to reflect an unrealistic and impractical expectation for PDS to predict that GDOE would even initiate the IFBs in April and that PDS would participate as a potential bidder in May. In other words, GDOE's argument asserts that PDS was on notice of facts that would have given rise to protest before it even became a bidder in the instant case. As such, the Court finds that PDS is likely to succeed on the merits as it relates to the timeliness of its protest. The Court now turns to whether the protest is pre- or post-award.

### ii. Pre- or Post-Award Protest

Once a party brings a timely protest, an automatic stay of procurement until a final resolution of that protest is required by Title 5 section 5425(g):

> In the event of *a timely protest* under Subsection (a) of this Section or under Subsection (a) of § 5480 of this Chapter, *the Territory shall not proceed further with the solicitation or with the award of the contract prior to final resolution of such protest, and any such further action is void…*

5 GCA § 5425(g) (emphasis added). In order to trigger the automatic stay, the protest must have been timely and before the award was made. *See Guam Imagining Consultants*, 2004 Guam 15 ¶ 35.

The Court has established that PDS's protest to GDOE was timely. As such, the statute is clear: "*the Territory shall not proceed further with the solicitation or with the award of the contract prior to final resolution of such protest, and any such further action is void….*" 5 GCA § 5425(g) (emphasis added). PDS's timely protest to GDOE, on June 9 and 10, 2021, triggered the stay under the statute. In turn, GDOE had obligation to cease further action, including the award of the contract to GTA and any performance thereto, until PDS's protest was resolved.

*See* 5 GCA § 5425(g). Therefore, it cannot be said that PDS's protest is "post-award" because no award could have been made once the stay was in place. Even while GDOE and GTA insist that PDS's protest is "post-award" such assertion would be considered "any such further action" under the statute, which the statute also declares is "void." *See Id.* As such, the Court finds that PDS is likely to succeed on the merits as it relates to the pre-award nature of its protest triggering the stay under 5 GCA § 5425(g). Finally, the Court considers whether PDS exhausted administrative remedies.

### iii. Exhausting Administrative Remedies

Before a party may bring its procurement-related claims before the Superior Court, it must exhaust its administrative remedies. *DFS*, 2020 Guam 20 ¶ 51; citing *Holmes v. Territorial Land Use Comm'n*, 1998 Guam 8 ¶ 9 ("When an administrative remedy has been provided by statute, this remedy must be exhausted before the courts will act.") "In the context of a challenge under the procurement law, exhaustion requires that an aggrieved bidder protest to the procuring agency, *see* 5 GCA § 5425(a)-(c), and appeal any adverse decision to the Public Auditor, *see [I]d.* § 5425(e), before bringing an 'action' in the Superior Court." *Id.* at ¶ 51. The requirement to exhaust administrative remedies applies only to those claims that directly arise under the Procurement Code and are filed in the Superior Court under 5 GCA § 5480. *Id.* at ¶ 72. Therefore, the final question related to PDS's likelihood of success on the merits is whether PDS exhausted administrative remedies.

First, exhaustion of administrative remedies requires that PDS protest the procuring agency, which is GDOE. *See Id.* at ¶ 51; 5 GCA § 5425(a)-(c). Here, PDS initiated its timely protest against GDOE on June 9 and 10, 2021, as discussed above. PDS exhausted the first level of administrative remedies.

Second, exhaustion of administrative remedies requires that PDS appeal to the OPA within 15 days after its receipt of the notice of decision. *See Id.*; 5 GCA § 5425(e). Here, GDOE denied PDS's protest on June 29, 2021. PDS initiated its appeal to the OPA on July 14, 2021, which is exactly 15 days from the day GDOE denied its protest. As such, PDS's appeal to the OPA was timely, and the Court finds this administrative remedy to be exhausted. While this is enough to satisfy the requirement of exhausting administrative remedies under procurement law, the Court takes the time to address GDOE's argument below.

GDOE argues that PDS continues to have an opportunity to refile its appeal with the OPA pending the GPUC's decision on their claims related to the issue of tariffs. *See* Def's Opp'n p. 10 (Dec. 15, 2021). These circumstances are what make the instant matter unique. Here, the OPA made no decision or statement addressing PDS's contention about the stay under Title 5 GCA section 5424(g). Instead, the OPA, curiously, instructed PDS to file a petition or complaint regarding the Guam Telecommunications Act tariff issues, and re-file an appeal with the OPA. *See* V. Compl. Attachment B (Oct. 28, 2021). This coupled with GDOE and GTA's continued performance of the POTS and DTS contracts, despite the stay under Title 5 GCA section 5425(g), effectively places PDS in a position with no other choice but to seek an injunction to stop GDOE and GTA from taking further action under the disputed contracts. In other words, the Court recognizes that PDS was left with no other mechanism, but to come before the Court seeking a preliminary injunction to preserve the status as it was when PDS made its appeal to the OPA, at which point the procurement of the POTS and DTS should have been stayed but was not. It is only after preserving that status that PDS can (1) bring its claims regarding the tariffs to the GPUC to be heard on its merits, and (2) re-file its appeal to the OPA to be heard on the merits as it relates to the validity of the purported contracts between GDOE and GTA. Otherwise, the

contested contract would continue to run without ever being deemed valid, and any potential injury to PDS caused therein would only become harder and harder to measure.

**CONCLUSION**

For the reasons set forth above, the Court **GRANTS** PDS's Motion for Preliminary Injunction.

**IT IS SO ORDERED** _____OCT 1 1 2022_____.

**HONORABLE ARTHUR R. BARCINAS**
Judge, Superior Court of Guam

**SERVICE VIA E-MAIL**
I acknowledge that an electronic copy of the original was e-mailed to:
*RAZZANO, C.Tenorio, U-Stake Arriola*

Date:_____ Time: 10/11/22
**Joseph Bamba, Jr.**

Deputy Clerk, Superior Court of Guam